IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVE SANKHAR,                                        No. 03:14-cv-01644-HZ

        Plaintiff,

    v.                                              OPINION & ORDER

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.


George J. Wall
1336 E. Burnside Street, Suite 130
Portland, Oregon 97214

    Attorney for Plaintiff

Billy J. Williams
ACTING UNITED STATES ATTORNEY
District of Oregon
Janice E. Hebert
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201-2902


1 - OPINION & ORDER

Erin F. Highland
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Steve Sankhar brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits (DIB) and supplemental security income (SSI). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). I affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

     Plaintiff applied for DIB on July 7, 2010, and for SSI on August 27, 2010, alleging an onset date of September April 30, 2007.[1] Tr. 258-64, 266-72. His applications were denied initially and on reconsideration. Tr. 87-96, 107, 97-106, 108, 109-20, 133, 121-32, 134, 146-54, 156-61.

     On August 7, 2013, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ). Tr.40-86. On August 26, 2013, the ALJ found Plaintiff not disabled. Tr. 7-30. The Appeals Council denied review. Tr. 1-5.

## FACTUAL BACKGROUND

     Plaintiff alleges disability based on loss of sight in his left eye, back injury, and knee injury. Tr. 294. At the time of the hearing, he was fifty-two years old. Tr. 49. He has

---

[1] In his Opening Brief, Plaintiff states he amends his alleged onset date to the date of his fiftieth birthday. Pl.'s Brief at 2.

2 - OPINION & ORDER

completed one year of college and has training in construction and carpentry.  Tr. 53.  He has

past relevant work experience as a maintenance repairer.  Tr. 22.

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§

423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure.  See Valentine v.

Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step

procedure to determine disability).   The claimant bears the ultimate burden of proving disability.

Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the

claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in

combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at

141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed

disabled; if not, the Commissioner proceeds to step four.  Yuckert, 482 U.S. at 141.

3 - OPINION & ORDER

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform "past relevant work."  20

C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the

claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five,

the Commissioner must establish that the claimant can perform other work.  Yuckert, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden

and proves that the claimant is able to perform other work which exists in the national economy,

the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since his alleged onset date.  Tr. 12.  Next, at steps two and three, the ALJ determined

that Plaintiff has severe impairments of degenerative disc disease, osteoarthritis, pancreatitis, and

affective disorder, but that the impairments did not meet or equal, either singly or in

combination, a listed impairment.  Tr. 13-15.

At step four, the ALJ concluded that Plaintiff has the residual functional capacity (RFC)

to perform light work except that he can stand and walk for a total of four hours each day with no

limitations on sitting; he can only occasionally climb ramps, stairs, ladders, ropes, and scaffolds;

he can occasionally balance, stoop, kneel, crouch, and crawl; he is limited to occupations that do

not require near or far visual acuity, depth perception, field of vision, or color vision with the left

eye; he is limited to understanding and remembering simple instructions and carrying out simple,

routine tasks involving only simple work-related decisions.  Tr. 15.  With this RFC, the ALJ

determined that Plaintiff is unable to perform any of his past relevant work.  Tr. 22.  However, at

step five, the ALJ determined that Plaintiff is able to perform jobs that exist in significant numbers in the economy such as laundry worker or cashier.  Tr. 23.  Thus, the ALJ determined that Plaintiff is not disabled.  Id.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal quotation marks omitted).  The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision.  Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."  Vasquez, 572 F.3d at 591 (internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff alleges that the ALJ made three errors: (1) the VE's testimony upon which the ALJ relied in identifying the jobs that Plaintiff could perform at step five, conflicts with the Dictionary of Occupational Titles (DOT); (2) the ALJ should have found Plaintiff capable of only sedentary work; and (3) the ALJ improperly rejected the opinion of an examining physician.

/ / /

5 - OPINION & ORDER

I. Jobs Identified at Step Five

In her RFC, as well as in the hypotheticals presented to the vocational expert (VE), the ALJ included several left eye restrictions because of Plaintiff's left eye blindness. Specifically, the ALJ found that Plaintiff cannot perform near or far acuity, depth perception, field of vision, or color vision with the left eye. Tr. 15, 77.

Relying on the VE's testimony, the ALJ found, at step five, that Plaintiff could perform the jobs of cashier or laundry worker. Tr. 22-23. According to the DOT, both of these jobs require near acuity vision. See DOT #302.685-101 (laundry worker position described as requiring near acuity frequently, defined as one-third to two-thirds of the time), available at 1991 WL 672657; DOT #211.4621-020 (identified cashier position described as requiring near acuity frequently, defined as one-third to two-thirds of the time), available at 1991 WL 671840. Plaintiff argues that because the identified jobs require near acuity vision and Plaintiff is restricted from performing jobs that require near acuity vision in the left eye, the VE's testimony that Plaintiff is able to perform these jobs conflicts with the DOT.

As the Ninth Circuit recently explained, "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT - for example, expert testimony that a claimant can perform an occupation involving DOT requirements that appear more than the claimant can handle - the ALJ is required to reconcile the inconsistency." Zavalin v. Colvin, 778 F.3d 842, 846 (9th Cir. 2015). "The ALJ must ask the expert to explain the conflict and then determine whether the vocational expert's explanation for the conflict is reasonable before relying on the expert's testimony to reach a disability determination." Id. (internal quotation marks omitted) (citing Social Sec. Ruling (SSR) 00-4p).

6 - OPINION & ORDER

Here, the ALJ did not recognize any conflict between the VE's testimony and the restrictions in the RFC. Thus, the ALJ did not address if any such conflict could be resolved. As a result, Plaintiff argues that the ALJ erred and contends that the case must be remanded.

Defendant argues that the ALJ did not err by failing to reconcile any conflict because there was no conflict. Defendant notes that Plaintiff has near visual acuity limitations only in his left eye, not in his right eye. The VE's testimony does not conflict with the DOT job descriptions, according to Defendant, when the VE gave no testimony that the ability to use one eye would interfere with the near acuity required to perform the identified jobs.

In a December 2014 Order, I addressed a similar issue regarding a limitation on reaching. Lemear v. Colvin, No. 03:13-cv-01319-AC, 2014 WL 6809751 (D. Or. Dec. 1, 2014) (Order adopting a Findings & Recommendation authored by Magistrate Judge Acosta). There, the ALJ found that the plaintiff could only occasionally reach overhead with his left upper extremity or handle, finger, and feel with his left hand. Id. at *1. The ALJ posed a hypothetical to the VE consistent with those limitations. Id. In response, the VE identified three jobs that the plaintiff could perform. Id. All required frequent handling, fingering, and reaching. Id. The DOT did not specify whether workers performing the three identified jobs needed one or both hands to frequently handle, finger, and reach. Id.

The plaintiff in Lemear argued that the ALJ erred by failing to resolve a conflict between the DOT and the VE's testimony. As I stated in my Order, the issue was "whether a limitation on handling, fingering, and reaching with one hand conflicts with a DOT job description requiring frequent handling, fingering, and reaching generally." Id. As explained in Lemear:

> The Ninth Circuit has not ruled on this issue. However, every other court

in this District that has addressed a similar case has concluded that there is no conflict. Chief Judge Aiken recently held that "while some courts have held that a limitation on overhead reaching with one arm conflicts with a DOT job description requiring reaching generally, this District has held that no such conflict exists." Gonzales v. Colvin, No. 3:12–cv–01068–AA, 2013 WL 3199656, at *4 ((D. Or. June 19, 2013). Judge Simon explained in another case that "courts are divided on the question of whether . . . 'reaching,' 'handling,' or 'fingering' in the DOT requires the ability to use both arms or hands, and there is no controlling precedent." Lee v. Astrue, No. 6:12–cv–00084–SI, 2013 WL 1296071, *11 (D. Or. Mar. 28, 2013). Judge Simon made clear that he would not attempt to "resolve this division or state a general rule." Id. Instead, he held that the facts of Lee did not present a "direct conflict" between the DOT and the VE's testimony because in order for the Court to find a conflict, it would have to read into the DOT's description to find a requirement of reaching with both arms. Id.

Id. at *2 (further noting conflicting cases from other district courts within the Ninth Circuit)

Although the restriction in the instant case concerns Plaintiff's vision and not the use of his upper extremities, the rationale expressed in the cases from this District is consistent with Defendant's argument here: to conclude there is a conflict between the VE's testimony and the DOT would require the Court to read into the DOT's description of laundry worker and cashier a requirement that the claimant have no restrictions in near visual acuity in both eyes. Plaintiff makes no argument as to why a restriction in the vision of one eye should be treated differently than a restriction in the use of one arm. Thus, for the reasons explained in Lamear and the cases it cites, I agree with Defendant that the ALJ did not err.

II.  Light or Sedentary Exertional Capacity

Plaintiff notes that the ALJ's RFC places him between the sedentary and light categories of exertional ability. The ALJ found he can perform light work. Tr. 15 (citing 20 C.F.R. §§ 404.1567(b), 416.967(b)). But, the ALJ imposed additional restrictions of standing and walking up to a total of four hours per day. Id. Plaintiff asserts that "light work" typically requires

standing and walking for up to six hours per day.[2]  Based on this assertion, Plaintiff states that the

ALJ's RFC "falls between the sedentary and light category."  Pl.'s Brief at 6.  He further asserts

that because he turned fifty years old in 2011 and the ALJ did not find that he has transferable

skills to sedentary work, Plaintiff would be found "disabled" under the Grids if he were limited to

sedentary work.  Id.

Plaintiff states that because his RFC falls between the sedentary and light exertion levels,

he also falls between two Grid rules.  See 20 C.F.R., Pt. 404, Subpt. P, App. 2, Rule 201.14

(directing a conclusion of disabled if the limitation is sedentary); 20 C.F.R., P. 404, Subpt. P,

App. 2, Rule 202.14 (directing a conclusion of not disabled if the limitation is light).  Plaintiff

argues that in such cases, the Social Security Administration's (SSA) Programs Operations

Manual System (POMS)[3], DI 25025.015 which addresses "Using a Rule as a Framework When

Exertional Capacity Falls Between Two Rules," instructs the ALJ to determine whether the

claimant has a "slight" or "significantly" reduced capacity for the higher level of exertion.[4]

Plaintiff contends that in this case, the ALJ failed to ask the VE to determine which rule most

closely approximates the claimant's RFC and failed to make the appropriate determination

herself.  Plaintiff argues that if the ALJ found that her RFC was "significantly" less than an RFC

for light work, Plaintiff would be found disabled under the Grid rule for sedentary work.  Thus,

---

[2] SSR 83-10, available at 1983 WL 31251, at *6, suggests that a full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight-hour workday.

[3] The POMS is an "internal SSA document" which does not have the force of law but is persuasive authority.  Warre v. Comm'r, 439 F.3d 1001, 1005 (9th Cir. 2006).

[4] POMS 25025.015 is found at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425025015.

Plaintiff contends that the ALJ erred and the case should be remanded for the ALJ to properly apply POMS DI 25025.015.

Defendant agrees that Plaintiff's maximum exertional capacity as found by the ALJ falls between sedentary and light levels.  Defendant also agrees that if Plaintiff were limited to sedentary work, he would be disabled under the Grids as of his fiftieth birthday.  But, Defendant argues, the ALJ fulfilled her obligation to determine Plaintiff's occupational base by consulting the VE.  Defendant contends that the VE's testimony constituted substantial evidence supporting that ALJ's conclusion.

The VE testified that due to the standing and walking restrictions of four hours total in an eight-hour day, an individual meeting the criteria of the ALJ's hypothetical would need to work in a facility where there is a stool or a bench.  Tr. 77-78.  The VE testified that the stool/bench restriction would "drastically" reduce the number of available state and national laundry worker jobs to ten- or twenty-percent of the available jobs without that limitation.  Id. at 78.  Those reduced numbers, according to the VE, are 1,000 laundry jobs or possibly fewer in Oregon, and 75,000 to 80,000 such jobs nationally.  Id.  The VE gave reduced numbers for the cashier position as well, taking the four-hour stand/walk limitation into account.  Id. at 79.  As to that position, the VE testified that with the four-hour stand/walk limitation in the hypothetical, there would be 3,400 such jobs in Oregon and 300,000 nationally.  Id. at 79-80.

In her decision, the ALJ explained that if a claimant can perform all or substantially all of the exertional demands at a particular level of exertion, the Grids direct a conclusion of either disabled or not disabled.  Tr. 22.  When the claimant cannot perform substantially all of the exertional demands at a particular level or has nonexertional limitations, the Grids are used as a

framework for decisionmaking unless there is a rule that directs a conclusion of disabled without
considering the additional exertional or nonexertional limitations.  Id.  The ALJ continued to
explain the use of the Grids in the instant case, noting that if Plaintiff had the RFC to perform the
full range of light work, a finding of "not disabled" would be directed by the Grids.  Tr. 23.

However, the ALJ explained, Plaintiff's ability to perform all or substantially all of the
requirements of light level work was impeded by additional limitations.  Id.  Thus, to determine
the extent to which the additional limitations eroded the unskilled light occupational base, the
ALJ explained in her decision that she asked the VE about the jobs existing in the national
economy for an individual with Plaintiff's limitations.  Id.  The VE identified laundry worker and
cashier in response.  Id.  The ALJ acknowledged the VE's testimony about the reduction in job
numbers due to the standing and walking limitations, and found this to be a reasonable deviation
from the information in the DOT.  Id.  The ALJ then concluded that based on the VE's testimony,
Plaintiff could make a successful adjustment to other work that exists in significant numbers in
the national economy.  Id.

Defendant cites a 2000 Ninth Circuit case for the proposition that when a claimant's
exertional limitation falls between two Grid rules, the ALJ fulfills his or her obligation to
determine the claimant's occupational base by consulting a VE regarding whether a person with
the claimant's profile could perform substantial gainful work in the economy.  Moore v. Apfel,
216 F.3d 864 (9th Cir. 2000).  In that case, the claimant's exertional limitations placed him
between two rules:  sedentary and light.  Id. at 870.  And, the exact place he fell was difficult to
determine because of other limitations.  Id.  The Ninth Circuit concluded that SSR 83-12 directed
the ALJ to consult a VE in such situations and because that is exactly what the ALJ did in

<u>Moore</u>, the ALJ did not err.  <u>Id.</u> ("SSR 83–12 directs that when a claimant falls between two grids, consultation with a VE is appropriate") (citing SSR 83–12(2)(c)).

SSR 83-12, like POMS DI 25025.015, addresses the use of the grids as a framework when exertional capacity falls between two rules.  While similar, SSR 83-12 is more detailed and more comprehensive than POMS DI 25025.015.  Both set out possible scenarios when a claimant's exertional capacity falls between two rules, including the scenario when the two rules direct different conclusions - one disabled and one not disabled.  SSR 83-12 provides that

> 2. [i]f the exertional level falls between two rules which direct opposite conclusions, *i.e.*, "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:
>
>> a.  An exertional capacity that is only slightly reduced in terms of regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>>
>> b.  On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."
>>
>> c.  In situations where the rules would direct different conclusions, and the individual's exertional limitations are somewhere "in the middle," in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability.  Accordingly [VE] assistance is advisable for these types of cases.

SSR 83-12, 1983 WL 31253, at **2-3.

POMS DI 25025.015 contains a simpler and shorter version of the same instruction:

D.  Exertional capacity falls between rules with different conclusions

Determining whether a claimant is disabled is a more difficult judgment when his or her exertional capacity falls in the middle of two rules and the rules direct the opposite conclusion.  In this situation apply the:

> higher-numbered rule and find the claimant not disabled if you conclude
> the claimant has a slightly reduced capacity for the higher level of
> exertion; or
>
> lower-numbered rule and find the claimant disabled if you conclude the
> claimant has a significantly reduced capacity for the higher level of
> exertion.

POMS DI 25025.015. The POMS addresses only the first two scenarios in Section 2a and 2b of

SSR 83-12. Here, given that the full range of "light" work typically involves standing/walking

for six hours out of an eight-hour workday, it is not readily apparent that the four-hour

stand/walk limitation would "slightly" or "significantly" reduce his capacity for light work. This

places Plaintiff in the "middle" category addressed by SSR 83-12, Section 2c. The POMS does

not provide guidance to the ALJ in that situation. Under Section 2c of SSR 83-12, as well as

Moore, the ALJ should consult a VE in this circumstance. The ALJ did precisely that in this

case.

    Additionally, the VE's testimony supports a conclusion that the four-hour stand/walk

limitation does not "significantly" reduce Plaintiff's capacity for light work. While the VE

testified that the limitation impacted the number of laundry worker and cashier jobs available,

Plaintiff makes no argument that the 1,000 Oregon and 75,000 to 80,000 national laundry worker

jobs, or the 3,400 Oregon and 300,000 national cashier jobs are not "jobs that exist in significant

numbers" in the economy. See Gutierrez v. Comm'r, 740 F.3d 519, 529 (9th Cir. 2014) (2,500

regional and 25,000 national jobs constitutes a significant number); Thomas v. Barnhart, 278

F.3d 947, 960 (9th Cir. 2002) (1,300 Oregon jobs was significant).

    The POMS does not direct the ALJ to request that the VE make a determination as to the

"slightly" or "significantly" reduced capacity for the higher level of exertion when the claimant's

exertional capacity falls between two rules with different conclusions. Rather, it instructs the ALJ to make that determination. Here, because the RFC placed Plaintiff "in the middle," the ALJ properly consulted the VE. The VE's testimony provided the ALJ with job numbers indicating that even with the four-hour stand/walk limitation, Plaintiff did not have a significantly reduced capacity for the light level of exertion. The ALJ did not err in applying POMS DI 25025.015.

III.  Examining Physician Dr. Brendan Antiochos

On August 19, 2011, Dr. Brendan Antiochos examined Plaintiff. Tr. 343-45. In his three-page report, he recited Plaintiff's subjective complaints and noted his past medial history, medications, social history, employment history, and family history. Tr. 343-44. He performed a physical examination in which he made the following relevant remarks regarding Plaintiff's musculoskeletal system: range of motion of the back was significantly limited with Plaintiff able to flex his hips no more than 45 degrees toward the floor without provoking severe lumbar pain; no tenderness to palpation over the spine; range of motion at the bilateral hips provoked pain in the lower back; and straight leg testing was positive for pain. Tr. 344. Plaintiff also reported diminished sensation to light touch over the lateral portion of the right foot. Id. His gait was normal. Id. Dr. Antiochos noted the results of a November 2007 x-ray of the lumbar spine as well as a December 2007 MRI of the lumbar spine. Id.

In describing his impression, Dr. Antiochos wrote that Plaintiff suffered from chronic low back pain, with the December 2007 MRI demonstrating "multilevel degenerative disk disease with disk herniation at several levels causing impingement on nerve roots." Tr. 345. Dr. Antiochos noted that Plaintiff had "extensive osteophytosis in the lumbar spine consistent with

osteoarthritis or degenerative disease of the lumbar spine." Id. Plaintiff's description of his low back pain was "entirely consistent" with the prior imaging results. Id.

Dr. Antiochos wrote that Plaintiff's pain was provoked by the "sort of physical activities which were part of his previous employment." Id. He indicated that Plaintiff's activities were significantly limited due to the low back pain and he opined that Plaintiff's condition would "pose a significant obstacle to his being able to return to the sort of work which he had previously performed." Id.

In her decision, the ALJ discussed Dr. Antiochos's report. Tr. 21. She gave Dr. Antiochos's report "great weight" because it was consistent with the record. Id. "Accordingly," she explained," Plaintiff "is unable to perform past relevant work." Id. However, she stated, the RFC limitations she assessed accounted for the physical deficit identified by Dr. Antiochos. Id.

Plaintiff argues that the ALJ erred because even though the ALJ gave "great weight" to Dr. Antiochos's opinion, the ALJ nonetheless found that Plaintiff could lift up to twenty pounds occasionally and ten pounds frequently. Plaintiff suggests that the ALJ's lifting limits are inconsistent with Dr. Antiochos's opinion.

I disagree. As Defendant notes, Dr. Antiochos did not assign any functional limitations or express a general opinion on Plaintiff's ability to work. Tr. 345. While opining that Plaintiff's condition was an "obstacle" to the performance of his previous work in maintenance, Dr. Antiochos gave no opinion about Plaintiff's ability to perform a less physically demanding job. As such, there is no conflict between the RFC and Dr. Antiochos's opinion and the ALJ did not err.

/ / /

15 - OPINION & ORDER

CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this _____ day of _____, 2015

Marco A. Hernandez
United States District Judge

16 - OPINION & ORDER